```
                 IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF GEORGIA
                          ATLANTA DIVISION


LASHUNDA DAVIS-BURTON,          :
                                :
          Plaintiff,            :
                                :
                                :   CIVIL ACTION NO.
                                :
v.                              :   1:11-cv-03164-JEC
                                :
                                :
CITIMORTGAGE, INC. and MORTGAGE :
ELECTRONIC REGISTRATION         :
SYSTEMS, INC.,                  :
                                :
          Defendants.           :
```

### ORDER AND OPINION

This case is before the Court on defendants' Motion for Summary Judgment [31], plaintiff's Motion for Leave to File a Third Amended Complaint [34], plaintiff's Motion for Extension of Time to File a Response to defendants' Motion for Summary Judgment [36], plaintiff's Motion to Compel [37], plaintiff's Motion to Strike [48], plaintiff's Motion for Leave to File an Addendum to her Response to defendants' Motion for Summary Judgment [57], and plaintiff's Motion for Sanctions [59].

The Court has reviewed the record and the arguments of the parties and, for the reasons that follow, concludes that defendants' Motion for Summary Judgment [31] should be **GRANTED in part** and **DENIED in part**, plaintiff's Motion for Leave to File a Third Amended

Complaint [34] should be **DENIED**, plaintiff's Motion for Extension of Time to File a Response to defendants' Motion for Summary Judgment [36] should be **GRANTED**, plaintiff's Motion to Compel [37] should be **DENIED**, plaintiff's Motion to Strike [48] should be **DENIED**, plaintiff's Motion for Leave to File an Addendum to her Response to defendants' Motion for Summary Judgment [57] should be **GRANTED**, and plaintiff's Motion for Sanctions [59] should be **DENIED**.

<u>**BACKGROUND**</u>

I.  <u>**FACTS**</u>

This case arose from the foreclosure of plaintiff's property. On April 22, 2004, plaintiff LaShunda Davis-Burton obtained a mortgage loan from Home Star Mortgage Services, LLC ("Home Star") in the amount of $136,918.00 (the "Loan"). (Defs.' Statement of Material Facts [31] at ¶ 1.)[1] Plaintiff used the Loan to purchase real property located at 1333 Laura Lane, Austell, Georgia 30168 (the "Property"). (*Id.* at ¶ 2.) At the loan closing, plaintiff executed a note promising to repay the Loan (the "Note"). (*Id.* at ¶ 3; Note, attached to Defs.' Mot. for Summ. J. ("DMSJ") [31] at Ex. 1-A.) To secure payment of the Loan, plaintiff also executed a security deed

---

[1]  Plaintiff has filed an apparent response to defendants' statement of material facts, which only takes issue with six of defendants' statements [44]. The Court assumes that she concedes the remaining facts.

against the Property. (DSMF [31] at ¶ 4; Security Deed, attached to DMSJ [31] at Ex. 1-C.) The Security Deed states that it is given to "Mortgage Electronic Registration Systems, Inc., ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as grantee." (Security Deed, attached to DMSJ [31] at Ex. 1-C.) The Security Deed also provides that "Borrower does hereby grant and convey to MERS, . . . with power of sale" the Property. (*Id.*) Plaintiff, as borrower, also "underst[ood] and agree[d] that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or cancelling this Security Instrument." (*Id.*)

According to defendant CitiMortgage, it took possession of the promissory note that plaintiff had executed in favor of Home Star on or about June 1, 2004, after the latter endorsed the note to CitiMortgage. It then began servicing the loan. (DSMF [31] at ¶¶ 3, 5-7; Note attached to DMSJ [31] at Ex. 1-A.) Defendant indicates that "the undisputed testimony of [CitiMortgage] is that [CitiMortgage] has held the Note since 2004." (Defs.' Reply [54] at

3

11.)

Plaintiff does dispute that assertion.   She points to a MERS Milestone Report that she received in discovery, which she interprets as showing that, at some point in June of 2004, CitiMortgage transferred "beneficial rights" in the loan to Ginnie Mae.   (MERS Milestone Report, attached to Pl.'s Add. Resp. to DMSJ [57] at Ex. B.)[2]   Plaintiff further reads this report to show that Ginnie Mae transferred back this interest on May 19, 2010.   (Add., attached to Pl.'s Add. Resp. to DMSJ [57-7] at 3-4.)

She indicates that the Note she received in discovery shows only one endorsement from Home Star to CitiMortgage.   (*Id.* at 4.)   That there is no showing of an endorsement from Ginnie Mae back to CitiMortgage implies to plaintiff that CitiMortgage did not hold the Note at the time of the foreclosure sale.   (*Id.*)

As to the Note, itself, it contained covenants requiring plaintiff to pay principal and interest every month.   (DSMF [31] at ¶ 8.)   Plaintiff has not made the required monthly payments on her loan <u>since August 2009</u> and remains in default under the terms of the

---

[2]   Although the MERS Milestone Report appears to be hearsay, the Court considers it on summary judgment as it could be "reduced to admissible evidence at trial."   *See Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999)(explaining that hearsay evidence offered on summary judgment may be considered so long as it would be admissible at trial for some purpose).

4

Note.[3]   (*Id.* at ¶ 13.)   To date, plaintiff has not tendered the outstanding arrearage on the Note.  (*Id.* at ¶ 13.)

Around December 30, 2009, CitiMortgage referred plaintiff's loan to outside counsel at the law firm of McCurdy & Candler, LLC, with instructions to initiate a non-judicial foreclosure on the Property. (*Id.* at ¶ 14.)   MERS did not initiate or participate in the foreclosure on plaintiff's Property.  (*Id.* at ¶ 24.)

On January 28, 2010, McCurdy & Candler, LLC, on behalf of CitiMortgage, sent plaintiff written notice that a foreclosure sale was scheduled for March 2, 2010.  (DSMF [31] at ¶ 15.)  McCurdy & Candler, LLC also published the notice of sale under power once a week for four consecutive weeks prior to the March 2, 2010 foreclosure sale.  (*Id.* at ¶ 16.)  MERS assigned the Security Deed to CitiMortgage on February 23, 2010.  (*Id.* at ¶ 17.)   The assignment was recorded on March 1, 2010.  (*Id.* at ¶ 20.)  The Property was sold at a foreclosure sale on March 2, 2010.  (*Id.* at ¶ 21.)  CitiMortgage entered a successful bid and purchased the Property for $135,514.65. (DSMF [31] at ¶ 22.)   In May of 2010, Ginnie Mae transferred "beneficial rights" back to CitiMortgage.  (MERS Milestone Report, attached to Pl.'s Add. Resp. to DMSJ [57] at Ex. B.)

---

[3]   While the voluminous pleadings and exhibits may somewhere reveal this fact, the Court cannot determine whether plaintiff has yet been evicted from the home.   If not, this means she has been living rent-free in the home for over three years.

5

## II.  **PROCEDURAL HISTORY**

On August 18, 2011, plaintiff filed the present lawsuit against these defendants in the Superior Court of Cobb County.  (Compl. [1].) She filed an amended complaint shortly thereafter.  Defendants removed the action to this Court and filed an answer.  ([1, 2, 3].) Two days later, plaintiff filed her Second Amended Complaint.  (2d Am. Compl. [7].)

In her Second Amended Complaint, plaintiff's allegations largely mirror the facts recited by defendants in their motion for summary judgment.  She alleges that she executed the Note and Security Deed, and received notice of the foreclosure sale.  She then lists several "counts," which appear to allege wrongful foreclosure, fraud, and breach of contract.  She asks the Court to "affirm" the sale and award compensatory and punitive damages.

After filing her Second Amended Complaint, plaintiff moved to remand the action back to state court [6] and also filed a Motion for Alternative Dispute Resolution [17].  Defendants then filed a Motion for Judgment on the Pleadings [18], together with a Motion to Stay Discovery pending disposition of this motion [19].

On December 5, 2011, the Court denied plaintiff's Motion to Remand to State Court, plaintiff's Motion for Alternative Dispute Resolution, defendants' Motions for Judgment on the Pleadings, and defendants' Motion to Stay Discovery.  (Order of Dec. 5, 2011 [25].)

Discovery proceeded and was to expire on April 3, 2012 [24]. Nevertheless, defendants prematurely filed their Motion for Summary Judgment [31] on January 6, 2012. On this same day, plaintiff filed a Motion for Leave to file a Third Amended Complaint [34]. Three days later, plaintiff filed a Motion for Extension of Time to File a Response to Defendants' Motion for Summary Judgment [36] and a Motion to Compel [37]. She later moved to strike [48] a declaration offered in support of defendants' motion for summary judgment.

As discovery was still ongoing, plaintiff and defendants continued to discuss the discovery of certain documents. After obtaining a "MERS Milestone Report" from defendants, plaintiff filed a motion seeking leave to file an addendum to her Response to Defendants' Motion for Summary Judgment [57], which relies entirely on this new document. On March 9, 2012, plaintiff filed a Motion for Sanctions [59].

**DISCUSSION**

I.   **VARIOUS MOTIONS BEARING ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    A.   **Motions For Extension Of Time To Respond To Summary Judgment [36] And Motion For Leave To File Addendum To Response To Motion For Summary Judgment [57]**

As to plaintiff's Motion for Extension of Time [36] and Motion for Leave to File an Addendum to plaintiff's Response to defendants' Motion for Summary Judgment [57], there is a preference to address a

7

plaintiff's claims on the merits.  *See In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003).  In addition, plaintiff has good cause to have sought an extension of time and leave to file a supplement to her original response to defendants' motion for summary judgment.  Specifically, for reasons unclear to the Court, defendants decided unilaterally to file their summary judgment motion months before discovery had expired.  As plaintiff correctly notes, the discovery discussed in the Addendum was not disclosed until after defendants had filed their summary judgment motion and plaintiff had responded.  Accordingly, plaintiff shows good cause for both of the above requests.  Therefore, the Court **GRANTS** plaintiff's Motion for Extension of Time [36] and Motion for Leave to File an Addendum to plaintiff's Response to defendants' Motion for Summary Judgment [57].

**B.    Motion To Compel [37]**

After defendants objected to some of plaintiff's First Requests for Production, plaintiff filed a motion to compel production of (1) a privilege log, (2) an original copy of the Note, (3) HUD documents, (4) a legal services agreement between CitiMortgage and its attorneys, and (5) certain electronic documents related to MERS.

Motions to compel are governed by Federal Rule of Civil Procedure 37.  A prerequisite to the success of any motion to compel is the inclusion of a "certification that the movant has in good faith conferred or attempted to confer with the person or party

AO 72A
(Rev.8/82)

failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1). Plaintiff has not provided any such certification, which alone is sufficient to deny the motion to compel. *See Kelly v. Old Dominion Freight Line, Inc.*, 376 Fed. App'x 909, 914 (11th Cir. 2010)("*pro se* status does not excuse non[-]compliance with procedural rules" including Rule 37(a)(1) certification requirement); *Jacox v. Dep't of Defense*, 291 Fed. App'x 318, 318 (11th Cir. 2008)(affirming denial of motion to compel where pro se litigant failed to include certification that he had in good faith conferred or attempted to confer with the defendants about discovery issues prior to seeking court action).[4]

The motion to compel should also be denied on the merits. First, the request for a privilege log is moot, as defendant CitiMortgage has provided one.[5] (Letter, attached to [42] at Ex. 2.)

_____

[4] The motion was also premature as to the Second Requests to Produce because, at the time of its filing, CitiMortgage had a week before CitiMortgage's deadline to respond to plaintiff's document requests. *Gay v. AirTran Airways, Inc.*, 427 Fed. App'x 743, 744-45 (11th Cir. 2011)(affirming denial of motion to compel that was filed before discovery was due and did not include certification).

[5] Plaintiff also moves for sanctions [59] based on the allegedly inadequate and untimely privilege log. Her failure to comply with Federal Rule of Civil Procedure 37(a)(1)'s requirement that she include certification that the she has in "good faith conferred or attempted to confer with" defendant CitiMortgage precludes an award of sanctions. Moreover, the Court declines to award sanctions based on its inherent power to control the litigation process. *See Eagle Hosp. Physicians, LLC v. SRG Consul., Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009)(court may sanction litigation misconduct using inherent

AO 72A
(Rev.8/82)

As for providing an original copy of the Note, the Court concludes that this request should be denied.  Importantly, plaintiff does not identify any requirement that defendants are obligated to provide the original Note in discovery, and defendants say that they have provided the copy they have on file.  To the extent plaintiff contends that this copy is inadequate proof of ownership, she was able to pursue, and did pursue, this argument in response to defendants' motion for summary judgment.

As for the HUD documents, plaintiff seeks them to determine any amount claimed or reimbursed under the terms of the promissory note and security deed, and to verify proper title.  (Mot. to Compel [37] at 10-11.)  However, what the government might have paid out appears to have no relevance to the issue in this case: defendants' power to foreclose.  Moreover, defendants have claimed uncertainty about whether these documents even exist.  Plaintiff's requests for agreements between defendants and their attorneys are clearly protected by the attorney-client privilege and not discoverable.  *See* FED. R. CIV. P. 26(b)(1)(discovery limited to nonprivileged matters); *Floyd v. SunTrust Banks, Inc.*, Civil Action No. 1:10-CV-2620-RWS,

---

power "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases").  Plaintiff has not demonstrated that defendants have behaved in bad faith by "delaying or disrupting litigation or hampering enforcement of a court order."  *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006).  Plaintiff's Motion for Sanctions [59] is therefore **DENIED**.

10

2011 WL 2604818 (N.D. Ga. June 30, 2011)(Story, J.)(denying request for communications between defendants and their attorneys on grounds of attorney-client privilege).  Plaintiff's remaining requests for vaguely described MERS documentation appears to have been resolved by the parties after the motion was filed.  Defendants handed over a MERS Milestone Report in response to plaintiff's narrowed requests for production, rendering her request moot.  (*See* Correspondence, attached to Resp. to Mot. for Sanctions [61] at Ex. E.)  In short, plaintiff's Motion to Compel [37] is **DENIED**.

### C.   Motion To Strike [48]

Plaintiff moves to strike the declaration of John M. Linnenbrink, a Business Operations Analysis for CitiMortgage, which was filed in support of defendants' motion for summary judgment.  His declaration, based on personal knowledge, forms much of the basis for defendants' motion for summary judgment.  Plaintiff accuses him of deception, because she believes that he misrepresented the amount owed by plaintiff on the Note.

According to plaintiff, CitiMortgage reported the outstanding principal balance of the Note as $127,532.00 to the IRS. (Motion to Strike [48] at 3, Ex. A.)  However, Linnenbrink reported the outstanding principal and interest on the Note as $134,229.30. (Linnenbrink Aff. [34] at ¶ 15(a).)  In support of her motion, plaintiff cites authority pertaining to sanctions under Federal Rule

of Civil Procedure 11 and asks that the Court either strike this declaration "for perjury" or issue sanctions for bad faith and fraud upon the Court.  (Mot. to Strike [48] at 2-5.)

Plaintiff misreads Linnenbrink's declaration, as well as the IRS form 1099-A.  The IRS form lists the balance of <u>principal</u> outstanding on the Note.  Linnenbrink's figure includes the outstanding <u>principal and interest</u>.  Accordingly, there is no perjury here; there is only plaintiff's reading mistake.  Plaintiff's Motion to Strike [48] is therefore **DENIED**, as well as any request for sanctions.

III.  <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [31]</u>

A.    <u>Standard Of Review And Claims Being Made</u>

Rule 56 of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Where the nonmovant bears the burden of proof, the moving party need only show the absence of evidence to support the nonmovant's case, or affirmative evidence demonstrating that the nonmovant will be unable to prove their case at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-116 (1993).  An issue is material if, "under the applicable substantive law, it might affect the outcome of the case." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1189 (11th Cir. 2010).  An issue is genuine when the evidence

12

is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

The court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *See Patton v. Triad Guar. Ins. Corp.*, 277 F.3d 1294, 1296 (11th Cir. 2002). Nonetheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no genuine issue for trial. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

Relying on plaintiff's Second Amended Complaint and related briefing, plaintiff's claims may be distilled into essentially four causes of action: wrongful foreclosure, fraud, breach of contract, and a violation of O.C.G.A. § 44-14-190. Defendants move for summary judgment on all claims.

13

**B.   Wrongful Foreclosure**[6]

To establish a claim for wrongful foreclosure, plaintiff must prove that "a legal duty [was] owed to [her] by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury [she] sustained, and damages." *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 371 (2004).[7] To

───────────────────

   [6] Defendants' argument that plaintiff lacks standing to sue for wrongful foreclosure because she has not tendered payment for amounts due under the loan is unpersuasive.  This requirement appears to apply only to suits seeking injunctive relief.  *See Mickel v. Pickett*, 241 Ga. 528, 537 (1978)("To enjoin a foreclosure proceeding a borrower must tender the amounts admittedly due even though it claims that the lender has breached some independent covenant in the contract."); *Smith v. Citizens & So. Fin. Corp.*, 245 Ga. 850, 852 (1980)("Appellants have made no tender of the indebtedness secured by the deed to secure debt and thus are not entitled to set aside the sale under power.").

   Plaintiff indicates she is not seeking injunctive relief.  As noted *supra* at 5, n.3, it is not clear whether plaintiff has yet vacated the property, but the Court assumes that after what would be three years of non-payment, she has.  In any event, the fact that plaintiff's arrears do not block her ability to file a wrongful foreclosure claim does not mean that the amount of that arrearage might not be deducted from any recovery that she might otherwise gain.  Should her claim eventually proceed to trial, defendant would be permitted to file a counterclaim for the amount of this arrearage or otherwise seek a means to have that deficit taken into account should there ever be an award for plaintiff.

   [7] Defendant MERS did not institute or pursue the foreclosure. As such, summary judgment on plaintiff's wrongful foreclosure claim against defendant MERS is **GRANTED**.  *See Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 375 (2004)(affirming summary judgment for third party purchaser and law firm that handled foreclosure proceedings in a wrongful foreclosure action because neither party actually foreclosed on the property).

14

demonstrate a breach of a legal duty owed to her, the plaintiff must show a violation of the applicable foreclosure statutes. *See McCarter v. Bankers Trust Co.*, 247 Ga. App. 129, 132 (2000).

Plaintiff contends that defendant CitiMortgage's foreclosure was wrongful because (1) it lacked the legal authority to foreclose; (2) the notice it provided did not comply with the applicable notice statute; and (3) defendant had waived the right to accelerate the obligation.

1.   Defendant CitiMortgage's Authority to Foreclose

As to defendant's legal authority to foreclose on the property, a claim for wrongful exercise of a power of sale under O.C.G.A. § 23-2-114 can arise when the creditor has no legal right to foreclose. *DeGolyer v. Green Tree Servicing, LLC*, 291 Ga. App. 444, 449 (2008). In most foreclosure cases before this Court, the foreclosing party is the holder of the security deed. Often, the holder of the note is a different entity. It is no accident that the foreclosing party is the holder of the security deed, as, in return for receiving the proceeds of the mortgage, the debtor has almost always agreed to assign the security deed to an entity that will have the power directly, or through its agents, to foreclose in the event of a default.

This phenomenon, however, has given rise to challenges from debtors who, seeking to avoid or postpone foreclosure and eviction,

15

argue that the foreclosure was invalid because the deed holder, as opposed to the note holder, was the foreclosing entity.  In this district, the majority view is that the security deed holder has the power to foreclose.  *See LaCosta v. McCalla Raymer, LLC*, Civil Action No. 1:10-CV-1171-RWS, 2011 WL 166902, at *3-*4 (N.D. Ga. Jan. 18, 2011)(Story, J.).  A minority view has arisen, however, which holds that it is only the note holder who can properly foreclose.  *See Stubbs v. Bank of Am.,* 844 F. Supp. 2d 1267, 1273 n.3 (N.D. Ga. 2012)(Totenberg, J.).

This split of authority is discussed in this Court's Order in *Chae Yi You and Chur K. Back v. JPMorgan Chase Bank, N.A. and Fed. Nat'l Mortg. Assoc.*, 1:12-cv-202-JEC-AJB.  (Order and Op. [15] Sept. 7, 2012 at 10-15.)  In addition, this Court has recently certified this question to the Georgia Supreme Court, whose answer will hopefully decide these uncertain questions of Georgia law.  (*See Chae Yi You, supra*, at Order [16] and Order and Op. [15] at 14-15.)

In the present case, however, this uncertainty in Georgia law would not matter if defendant, in fact, held both the Note and the Security Deed, as defendant would then be covered as to both the document that the majority view indicates is required for foreclosure (the Security Deed), as well as the document preferred by the minority view (the Note).  Indeed, defendant indicates that it is "undisputed" that defendant CitiMortgage held both the deed and note

16

at the time of the foreclosure sale.  *Supra* at 3-4.

Yet, after the defendant so characterized this issue, a dispute has arisen, with plaintiff's Addendum contending that the MERS Milestone Report, which plaintiff interprets as indicating that defendant had transferred the Note, or some "beneficial interest" in it, in 2004.  Plaintiff does not read the report as showing that the Note was transferred back to defendant prior to the foreclosure sale. If defendant did not hold the Note at the time of the foreclosure sale, then resolution of this case would have to await a decision by the Georgia Supreme Court as to the certified question.

As to plaintiff's argument, defendant makes a number of evidentiary objections as to the admissibility of the MERS Milestone Report, including that it does not constitute the "best evidence" of who held the Note, and when.  The Court finds these arguments unpersuasive at this juncture.  Plaintiff is a *pro se* litigant, and if defendant has better evidence on these points, it should provide it, instead of waiting for plaintiff to figure out what additional specific records she should subpoena.  In addition, the Court does not understand what it means for an entity such as Ginnie Mae to hold a "beneficial interest," which interest is apparently different than actually holding or owning the Note.  More explanation will be necessary for the Court to understand the legal significance of any of this.  Further, more factual development of this issue may be

17

necessary.

Accordingly, as it is possible on this record that the defendant did not hold the Note at the time of the foreclosure sale and as there is a difference of opinion as to whether Georgia law requires the foreclosing party to hold the note, the Court **DENIES without prejudice** defendants' Motion for Summary Judgment [31].

Effective **October 9, 2012,**[8] discovery is reopened for a **60-day period** to enable the parties to fully develop the factual record on this point. During discovery, defendant is directed to provide the plaintiff with any documents that would shed light on whether the Note, or a beneficial interest therein, was transferred to Ginnie Mae and when those transactions occurred, including when defendant received back transfer of the Note or of a full beneficial interest. Plaintiff may depose a Rule 30(b)(6) witness who should be in a position to explain all of the above, including explaining what a "beneficial interest" is. To the extent that the computer-generated MERS Milestones Report may not be a reliable indicator of any of these factual matters, this witness, or another appropriate witness, should be made available to explain why.

---

[8] This means that plaintiff should not attempt to proceed with discovery before that date, nor should she pursue any discovery outside the limited area described above.

AO 72A
(Rev.8/82)

Defendant may file a renewed motion for summary judgment on this point **within 30 days after expiration of the discovery period**. Alternatively, if defendant does not wish to further pursue its argument that it held the Note at the time of the foreclosure sale, then the renewed discovery and briefing described above will be unnecessary.  In that event, the Court and parties will await the answer of the Georgia Supreme Court as to whether the holder of the Security Deed is the entity that may foreclose.  If the Supreme Court answers "yes," then defendant will prevail on this issue, as it clearly held the Security Deed at the time of the foreclosure sale. Defendant should advise, **by October 9, 2012**, which route it chooses.

> 2.   Adequacy of Notice Provided

Plaintiff also argues that defendant CitiMortgage failed to provide appropriate notice of foreclosure, as required by O.C.G.A. § 44-14-162.2.  *See Calhoun First Nat'l Bank v. Dickens*, 264 Ga. 285, 286 (1994)("The bank's failure to provide proper notice constituted a breach of the duty to fairly exercise the power of sale created by § 23-2-114.").

O.C.G.A. § 44-14-162.2[9] governs the notice that must be given in

---

[9]   (a) Notice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other lien contract shall be given to the debtor by the secured creditor no later than 30 days before the date of the proposed foreclosure.  Such notice shall be in writing, shall include the name, address, and telephone number of the individual or entity who shall have full authority to

AO 72A
(Rev.8/82)

nonjudicial foreclosure sales, such as the one at issue here. This statute requires, among other things, that "[n]otice of the initiation of proceedings to exercise a power of sale in a . . . security deed . . . shall be given to the debtor by the secured creditor no later than 30 days before the date of the proposed foreclosure." O.C.G.A. § 44-14-162.2(a).

Defendant CitiMortgage has presented the notice of foreclosure they sent to plaintiff and it appears to comply with the notice statute's requirements. It was sent more than thirty days before the date of the proposed foreclosure, March 2, 2010. (Ex. 2-D, attached to Olson Aff. [31].) It was in writing and included all of CitiMortgage's contact information as the authority who could negotiate, modify, and amend all terms of the mortgage. (*Id.*) It included a copy of the notice of sale that was submitted to and published in the Marietta Daily Journal and was also sent by

---

negotiate, amend, and modify all terms of the mortgage with the debtor, and shall be sent by registered or certified mail or statutory overnight delivery, return receipt requested, to the property address or to such other address as the debtor may designate by written notice to the secured creditor. The notice required by this Code section shall be deemed given on the official postmark day or day on which it is received for delivery by a commercial delivery firm. Nothing in this subsection shall be construed to require a secured creditor to negotiate, amend, or modify the terms of a mortgage instrument.

(b) The notice required by subsection (a) of this Code section shall be given by mailing or delivering to the debtor a copy of the notice of sale to be submitted to the publisher.

certified mail to the Property. (*Id.* at 2-B, 2-C; Olson Aff. [31] at ¶ 12, Ex. 2-D.)

While plaintiff does not dispute that she received notice of the foreclosure sale within the required 30 days, she claims this notice was invalid because CitiMortgage was not the "secured creditor"[10] at the time the notice was sent out.  In other words, the notice of foreclosure was deficient because it misrepresented that CitiMortgage was actually the "secured creditor."

This is actually a rehash of plaintiff's first argument: that defendant was not the secured creditor because it did not hold the Note at the time of the foreclosure sale.  Plaintiff argues instead that Ginnie Mae actually held the Note: an assertion that she supports by referring to the MERS Milestones Report.  As noted *supra*, this issue requires further factual development and briefing.

Since briefing concluded, the Georgia Court of Appeals has held that a proper notice must identify the secured creditor. *See Reese v. Provident Funding Assocs., LLP*, --- Ga. App. ---, No. A12A0619, 2012 WL 2849700 (Ga App. July 12, 2012); *but see Stowers v. Branch Banking & Trust Co.*, No. A12A1176, --- Ga. App. ---, 2012 WL 3601795, at *2 (Ga. App. Aug. 23, 2012)(finding substantial compliance with

---

[10]   Plaintiff's reliance on O.C.G.A. § 7-6A-2(6) for the definition of a "creditor" is incorrect.  This provision applies only to the Georgia Fair Lending Act, an entirely different statute than the one plaintiff alleges defendants violated.

21

O.C.G.A. § 44-14-162.2 where the notice identified only the lender's attorney, who was neither the secured creditor nor the entity with full authority to modify the loan).  If defendant is deemed not to be the secured creditor because it did not hold the Note, it will then necessarily also not have complied with the Georgia notice statute (O.C.G.A. § 44-14-162.2), which *Reese* has interpreted as requiring disclosure of the secured creditor.

The Court has likewise certified to the Georgia Supreme Court questions concerning the interpretation of this statute.  *See supra* at 16.  Accordingly for the same reasons identified above, the Court **DENIES without prejudice** defendant CitiMortgage's Motion for Summary Judgment [31] on plaintiff's claim for wrongful foreclosure as to plaintiff's claim that defendant did not comply with the Georgia statute regarding notice of a foreclosure sale.

> 3.   Waiver

In her response to defendants' motion for summary judgment, plaintiff asserts for the first time that CitiMortgage was either prohibited from accelerating the amounts owed under the Note or waived the right to accelerate the obligation.  (Resp. Br. [47] at 8-9.)  She points to the following provision of the Note:

> If Borrower defaults by failing to pay in full any monthly payment, then  Lender may, except as limited by regulations of the Secretary [of HUD] in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest.  Lender may choose

22

> not to exercise this option without waiving its rights in
> the event of any subsequent default.  In many circumstances
> regulations issued by the Secretary [of HUD] will limit
> Lender's rights to require immediate payment in full in the
> case of payment defaults.  This Note does not authorize
> acceleration when not permitted by HUD regulations.

(Note, attached to DMSJ [31] at ¶ 6(B).)

Plaintiff contends that CitiMortgage waived its right to accelerate under the Note because plaintiff had previously defaulted on the loan in April 2006 and defendant CitiMortgage had accelerated the debt, but later defendant decided to reinstate the loan on August 26, 2006 after a partial claim was paid by HUD.  (Resp. Br. [47] at 9.)  Contrary to plaintiff's argument, the above provision of the Note indicates that a Lender does not waive its right to accelerate the debt by not immediately doing so upon a default.  Further, as defendant points out, plaintiff's interpretation would mean that a lender would never be permitted to allow a tardy debtor to modify her loan, as such flexibility and cooperation would prevent the lender from ever foreclosing in the future.  Clearly, with her payment history, this is not a position that plaintiff should want to support.

To the extent plaintiff is claiming defendant violated some HUD regulation, she has not identified any such regulation, nor has she explained how the violation of such a regulation would support a viable cause of action.

23

For the above reasons, the Court **GRANTS** summary judgment to defendants as to the waiver claim.

**B.    Fraud**

While the Court cannot rule on the plaintiff's wrongful foreclosure claim without either further briefing or further guidance from the Georgia Supreme Court, it can deal with some other claims on which the defendants seek summary judgment. That is, plaintiff also claims that defendants committed various acts of fraud during the course of their loan relationship and during foreclosure. She argues that the assignment from MERS to CitiMortgage was fraudulent because either (a) MERS does not have the power to make assignments, or (b) the assignment was forged. (2d Am. Compl. [7] at ¶¶ 24-31.)

Plaintiff cites no authority for the proposition that MERS has no power to make assignments. *See Taylor, Bean & Whitaker Mortg. Corp. v. Brown*, 276 Ga. 848, 849 n.1 (2003)(describing MERS's system of recording sales and assignments of mortgage loans). Further, her contention that the assignment was forged is without any evidentiary support. Defendants have submitted evidence disproving her assertion that the persons who purported to indorse the assignment on behalf of MERS were not MERS employees authorized to do so. (MERS Resolution, attached to DMSJ [31] at Ex. 1-G.)

Plaintiff's related argument that defendants committed fraud by forging the deed of foreclosure is without merit, and borders on

24

being dishonest.  (2d Am. Compl. [7] at ¶¶ 14-17.)  According to plaintiff, she sent a "revocation of power [of] attorney" to CitiMortgage.  (*Id.* at ¶ 7.)  This document purports to revoke the power of sale plaintiff previously granted Home Star under the express terms of the Security Deed.  (Revocation of Power of Attorney, attached to Compl. [1] at Ex. F; Security Deed attached to DMSJ [31] at Ex. A-2, ¶ 18.)  According to plaintiff, CitiMortgage's reliance on the same power of sale found in the Security Deed was a "forgery" because plaintiff's later unilateral act deprived them of this power.  (2d Am. Compl. [7] at ¶ 15.)

Clearly, a debtor who has happily accepted the substantial money that a lender has provided her cannot, down the road, after the money has been spent, then deprive the lender of the security for that debt, just because the debtor wishes it to be so.  Indeed, it takes a lot of audacity to even make such an argument.  Certainly, if plaintiff wanted to undo defendants' rights under the Security Deed, she could have done so by paying off her loan.  But as plaintiff had ceased even making her monthly mortgage payments, she was obviously not in a position to pay off her mortgage.

In short, plaintiff accepted a loan from Home Star in order to purchase a home and agreed that if she failed to make timely payments on that loan, Home Star, or its successor or assigns, had the power to foreclose on the Property through a power of sale. Plaintiff

25

cannot, by verbal fiat, upend a bargain that she willingly entered and summarily award herself a free house, by merely sending a few papers to her mortgage company that purport to end the relationship.

Given the above faulty argument, plaintiff has produced no evidence of a forgery. Merely filing an affidavit of forgery pursuant to O.C.G.A. § 44-2-23, when plaintiff is actually alleging a false assumption of authority, does not create a genuine issue of fact. *See Deutsche Bank Nat'l Trust Co. v. JP Morgan Chase Bank, N.A.*, 307 Ga. App. 307, 313-15 (2011)(explaining that affidavit of forgery was insufficient to raise genuine issue of fact about whether deed was forgery under O.C.G.A. § 44-2-23 where affidavit merely alleged that individual who signed warranty deed was not an employee of company and where there was no evidence that person who signed deed was someone else).

Accordingly, summary judgment is **GRANTED** as to all of plaintiff's various theories of fraud.

### C.  Breach Of Contract

Plaintiff argues that CitiMortgage violated a section of the Security Deed requiring it to pay any windfall received from the sale at foreclosure. (Resp. Br. [47] at 12-13.) Paragraph 18 of the Security Deed provides that:

> Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, not limited to, reasonable

26

attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.[11]

Plaintiff contends that the payoff of the principal and interest on the Loan and the cost of attorney's fees leaves a surplus of over six-thousand dollars.  She wants the $6,000. Defendants submit unrebutted evidence that the value paid above the indebtedness went to cover these costs and fees, with no surplus. (Linnenbrink Aff. [31] at Ex. A, ¶ 15.)  Plaintiff's miscalculation of the principal and interest due, based on her reliance on a Consolidated Note Report that does not report accrued interest, does not create an issue of fact.  *See, supra* (discussing Motion to Strike).  Defendants have therefore not violated this provision of the Security Deed.  *See Whitaker v. Trust Co. of Columbus*, 167 Ga. App. 360, 361-62 (1983)(bank official's affidavit detailing costs associated with foreclosure sufficient to defeat claim for award of surplus proceeds).  Defendants' Motion for Summary Judgment [31] on plaintiff's breach of contract claims is therefore **GRANTED**.

---

[11]  The Note also requires plaintiff to pay costs and expenses, including reasonable attorneys' fees for enforcing the Note. (Note, attached to DMSJ [31] at Ex. 1-A, ¶ 6(C).)  The Note provides that "[s]uch fees and costs shall bear interest from the date of disbursement at the same rate as the Principal of this Note." (*Id.*)

AO 72A
(Rev.8/82)

D.   **Violation Of O.C.G.A. § 44-14-190**

O.C.G.A. § 44-14-190 provides that "[t]he money arising from the sale of mortgaged property sold under the regulations prescribed in this part shall be paid to the person foreclosing the mortgage unless claimed by some other lien which by law has priority of payment over the mortgage; and, when there is any surplus after paying off the mortgage and other liens, the surplus shall be paid to the mortgagor or his agent." As discussed above, defendants have shown that there is no disputed issue of fact regarding the absence of a surplus after payment of costs and fees. Defendants' Motion for Summary Judgment [31] on plaintiff's claim arising under O.C.G.A. § 44-14-190 is therefore **GRANTED**.

## II. **MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT [34]**

Plaintiff has also filed a Motion for Leave to File a Third Amended Complaint [34]. Federal Rule of Civil Procedure 15(a) provides that a party may amend a pleading after a responsive pleading is served "only with the opposing party's written consent or the court's leave." Leave to amend should be freely given "when justice so requires." FED. R. CIV. P. 15(a)(2). Rule 15(a)'s requirement that leave be granted "when justice so requires" places a limit on a court's discretion. *Laurie v. Ala. Ct. of Criminal Appeals*, 256 F.3d 1266, 1274 (11th Cir. 2001). Leave to amend may be denied upon a showing of undue delay, bad faith, dilatory motive on

28

the part of the movant, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment. *Id.*

Defendants oppose the amendment and argue that all of the above five reasons for denying amendment apply. The Court agrees that the motion to amend should be denied. This Third Amended Complaint represents the fourth complaint filed by plaintiff in this litigation. This belated filing was made with undue delay. Further, it violated the terms of the Joint Preliminary Report and Discovery Plan [9], which required any amendments to be made within 30 days after filing the Plan. (Plan [9] at ¶ 6.) *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417 (11th Cir. 1998)(affirming denial of leave to amend on ground that plaintiff failed to comply with pretrial scheduling order).

As to what plaintiff is trying to accomplish with this Third Amended Complaint [34], she seeks to add a claim for breach of contract. Plaintiff indicates that, at the inception of their relationship, Home Star had agreed to reduce plaintiff's interest rate for the first 24 months of the Loan. (3d Am. Compl. [34] at ¶ 43.) Per the terms of this "Buydown Deposit Agreement," plaintiff would submit a "Buydown Deposit," which would be applied to her monthly mortgage payments by the Lender for the first 24 months of the Loan. (*Id.* at ¶¶ 43-45.) The Buydown Deposit Agreement provided that:

29

> This [Buydown Deposit] is to be applied and paid by
> Mortgagee, on a periodic basis, toward monthly payments
> under the mortgage for the first 24 months of the mortgage
> loan.  Each monthly payment from the buydown deposit will
> pay only a part of the interest portion of the total
> mortgage payment, and Borrowers will be required to pay the
> balance of each mortgage payment as it comes due.

(Buydown Deposit Agreement, attached to 3d Am. Compl. [34] at Ex. O.)

According to plaintiff, when defendant CitiMortgage began servicing the Loan, it misapplied the Buydown Deposit monies to her escrow account.  (3d Am. Compl. [34] at ¶ 47.)  She claims that this resulted in irregularities in her mortgage payments and her overall loan balance.  (*Id.* at ¶¶ 48-49.)  Plaintiff contends that the breach of the Buydown Deposit Agreement harmed her because it resulted in the adjustment of her mortgage payment every six months during the 24-month period, which caused her mortgage payment to be unstable, caused her to incur unnecessary late fees, and left her with an overall incorrect loan balance.  (3d Am. Compl. [34] at ¶¶ 49-50.)  She asks the Court to designate an auditor to determine the true amount owed on the loan and order defendants to pay her the full difference in purchase price and the amount owed under the Audit.  (*Id.* at ¶¶ 4-5.)

Besides the delay in plaintiff's raising this claim, having omitted it in her first three complaints, defendant points to several substantive deficiencies.  Defendant notes that plaintiff's proposed breach of contract claim is inconsistent with her previously asserted

30

claims. The thrust of plaintiff's Second Amended Complaint is that defendant lacked the authority to foreclose under the terms of the Note and Security Deed. In her new claim, she contends that she and CitiMortgage were in privity such that CitiMortgage, not the purported note holder (Ginnie Mae), should be held responsible for any arithmetic mistakes in calculating her balance. The positions do not seem to be inconsistent.

Defendant also argues that plaintiff's proposed amendment would be futile because it fails to state a claim for relief for breach of contract. *See Grant v. Countrywide Home Loans, Inc.*, Civil Action No. 1:08-CV-1547-RWS, 2009 WL 1437566, at *8 (N.D. Ga. May 20, 2009)(Story, J.)("The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied.") To state a claim for breach of contract, plaintiff must allege a valid contract, a material breach of its terms, and damages arising therefrom. *Budget Rent-a-Car of Atlanta, Inc. v. Webb*, 220 Ga. App. 278, 279 (1996)("The elements of a right to recover for a breach of contract are the breach and the resultant damages to the party who has the right to complain about the contract being broken.").

According to defendants, plaintiff has not identified a contractual term requiring it to have applied the Buydown Deposit to

31

only the principal or interest portion of plaintiff's monthly payment. (Defs.' Resp. Br. [41] at 9.) Defendants point to other provisions in the contract, which arguably suggest that CitiMortgage was only obligated to apply the proceeds to the monthly payment, not allocate the money in any particular way. (*Id.*)

Without reaching whether the Buydown Deposit Agreement specifies how the Buydown Deposit was to be applied, it is apparent that plaintiff has failed to allege any damages in this Fourth Amended Complaint. She fears that she was caused some financial harm by the alleged monthly misapplication of her Buydown Deposit to her escrow account, instead of to her interest payment, but she does not explain what that harm was.  Instead, merely being suspicious, she wants the Court to appoint an auditor to figure all this out.

By the time of a fourth complaint, the plaintiff needs to do better than this.  To be allowed to file a new complaint beyond the time period allowed for such filing, plaintiff needed to bring a much more specific claim on which the Court could readily determine that plaintiff was entitled to relief, if her facts panned out.  Here, plaintiff does not spell out what those facts are.

Further, she offers no persuasive reason for her delay in seeking amendment. *See Invest Almaz v. Temple-Inland Forest Prods. Corp.*, 243 F.3d 57, 72 (1st Cir. 2001)(denying leave to amend where plaintiff failed to proffer valid reason for delay and simply tried

32

to add the claims because it had not thought of them earlier); *Sosa*, 133 F.3d at 1418-19 (amendment outside of scheduling order deadline requires showing of "good cause").

   She claims that she discovered this new breach of contract claim as the result of "ongoing discovery." (Mot. to Amend [34] at 2.) Yet, plaintiff was a party to the Buydown Deposit Agreement and would have had access to this document, as well as the facts giving rise to her claim, years before this suit was filed.[12] *See Sosa*, 133 F.3d at 1419 (affirming denial of leave to amend where plaintiff was aware of facts supporting amendment two weeks before deadline for amending complaint, but waited months to amend). Indeed, plaintiff has shown herself to be an aggressive litigant, who is quite good at parsing words found in statutes and contracts. Given those talents, one would have expected that, had the defendant made a misstep, plaintiff would have known and pointed it out to them at the time, and certainly would have been in a position to raise the claim in one of her three earlier complaints. A mere conclusory statement that she exercised diligence in prosecuting her case is therefore insufficient, and unpersuasive, in demonstrating her entitlement to amendment. *See Parker v. Brush Wellman Inc.*, Civil Action No. 1:04-

---

   [12] Indeed, defendant notes that approximately half the 24 payments at issue in this claim were made beyond the statute of limitations period.

33

CV-0606-RWS, 2008 WL 2704572, at *2 (N.D. Ga. July 7, 2008)(Story, J.)(denying leave to amend sought after scheduling order deadline where plaintiffs offered conclusory statement that they exercised diligence in pursuing amendment).

In short, the Court has acted generously toward plaintiff in reopening discovery as to the main claim in her case and in offering guidance on what she should try to accomplish in discovery.  The Court's generous spirit does not extend to allowing plaintiff to pursue a wild goose chase, launched only in her fourth complaint. Accordingly, for the above  reasons, plaintiff's Motion for Leave to Amend [34] is **DENIED**.

<u>CONCLUSION</u>

For the foregoing reasons, defendants' Motion for Summary Judgment [31] is **GRANTED in part** and **DENIED in part**, plaintiff's Motion for Leave to File a Third Amended Complaint [34] is **DENIED**, plaintiff's Motion for Extension of Time to File a Response to defendants' Motion for Summary Judgment [36] is **GRANTED**, plaintiff's Motion to Compel [37] is **DENIED**, plaintiff's Motion to Strike [48] is **DENIED**, plaintiff's Motion for Leave to File an Addendum to her Response to defendants' Motion for Summary Judgment [57] is **GRANTED**, and plaintiff's Motion for Sanctions [59] is **DENIED**.

34

AO 72A
(Rev.8/82)

No claims remain against defendant MERS and the Clerk is directed to terminate it from the action.  The only claim surviving summary judgment is against defendant CitiMortgage for wrongful foreclosure.  CitiMortgage's motion for summary judgment on this claim is **DENIED without prejudice** for the reasons set forth above.

Unless defendant CitiMortgage decides that it does not wish to pursue its argument that it held the Note at the time of the foreclosure sale, discovery will be reopened as set out above *supra* at 18 and defendant may file a renewed motion for summary judgment within 30 days after the expiration of reopened discovery.  Defendant should advise by **October 9, 2012**, whether it wishes to pursue the above position regarding the Note.

SO ORDERED, this <u>18th</u> day of SEPTEMBER, 2012.


/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE


35